(9) the Trust tax returns and annual or periodic statements;

(10) all claims against the Trust, including claims for indemnification or former officers and directors of Panex;

(11) all payments by the Trust of liabilities of Panex and/or its subsidiaries or predecessor corporations;

(12) all reports by the Trustees to the beneficiaries of the Trust, including reports made pursuant to § 7.1 of the Trust Agreement;

(13) schedules "A" and "B" to the Trust Agreement;

(14) compensation of the trustees of the Trust;

(15) all amendments and/or changes to the Trust Agreement;

(16) the stock of Wundies, Inc. (Panex's wholly owned subsidiary);

(17) the initial funding and assets of the Trust;

(18) the sale of Wundies, Inc. or its assets;

(19) the amount received by each Panex shareholder from the Litigation Plan and/or the dissolution of Panex;

(20) the amount received by each beneficiary of the Trust from the Trust;

(21) all assets of the Trust including its current assets;

(22) all financial statements relating to the Trust and Panex's dissolution;

(23) distribution of the assets of Laga Industries, Ltd.; and

(24) assets of Panex, Laga Industries, Ltd., The Duplan Corporation and/or their subsidiaries, predecessors or successors distributed, conveyed or transferred to Wundies Industries, Inc. and/or Wundies Enterprises, Inc.

6. After the above requested documents are produced, all interested parties, including the State of New York, shall be entitled to depose the current and former trustees of the Trust, pursuant to Fed.R.Civ.P. 30(b)(6), about the matters described in Paragraph 3 of this Order. The depositions shall take place in New York, New York or some other mutually convenient place.

7. Discovery shall generally be conducted so as to effectuate the purpose of this Order.[4]

**LOCAL 1829 OF the UNITED MINE WORKERS OF AMERICA, an unincorporated labor organization, Plaintiff,**

**and**

**Local 2410 of the United Mine Workers of America, an unincorporated labor organization, Proposed Intervening Plaintiff,**

**v.**

**ISLAND CREEK COAL COMPANY, a Delaware corporation, Defendant.**

Civ. A. No. 93–24–E.

United States District Court,
N.D. West Virginia,
Elkins Division.

Aug. 30, 1994.

4. From an efficiency standpoint counsel for Movants should combine their efforts and designate one or two counsel to conduct the depositions.

Stanley M. Hostler, Charleston, WV, Barbara Evans Fleischauer, Morgantown, WV, for plaintiff.

John E. Busch, Elkins, WV, Keith Fischler, Lexington, KY, for defendant.

## ORDER

MAXWELL, District Judge.

The above-styled civil action was originally filed on February 18, 1993, by Local 1829, seeking to vacate an arbitration award. While the action was pending, Local 2410 filed a Motion for Leave to Intervene which is currently under advisement. The original complaint was ultimately dismissed by the Court. The Court must now determine whether Local 2410 should be granted leave to intervene; whether its proposed amended complaint in intervention is barred by the statute of limitations or is otherwise untimely; whether the Court has subject matter jurisdiction over a proposed complaint in intervention where the original action has been dismissed; and whether it is proper to remand an arbitration award for clarification where it is alleged that new evidence alters the factual predicates upon which the arbitration decision was based.

A brief description of the procedural background of this action will be helpful in resolving the question. The case arose from four grievances which were consolidated for hearing and decision before Arbitrator Paul L. Selby, Jr.[1] The grievances were filed by three separate locals, including the plaintiff Local 1829 and the proposed intervenor, Local 2410.

The grievances arose from the defendant's plan to physically interconnect three mines underground and its decision to operate the resulting combined mines as a single comprehensive mine. The mines are: Laurel Run (represented by plaintiff Local 1829); Dobbin (represented by proposed intervenor Local 2410); and North Branch (represented by Local 2478). The controversy centers on the defendant's proposal to combine and merge the seniority units, which previously existed separately at each of the constituent mines, into one comprehensive seniority unit extending over the whole of the single comprehensive operation.

In a Decision and Award dated November 20, 1992, Arbitrator Selby denied the grievances, determining that the defendant may interconnect the three mines, merge the seniority units, and "dovetail" the seniority of the employees in the constituent units on the basis of a 1:1:1 ratio, whereby the most senior working employee of the first mine would be first on the new, combined seniority list, the most senior working employee of the second mine would become second on the new list, and so forth. When all of the active employees of one mine have been exhausted, the process continues until the list of active employees at the other mines have been exhausted. Finally, the seniority of the laid-off workers is ranked in the same 1:1:1 ratio. As stated, Local 1829 filed this action to vacate the award.

On July 28, 1993, Local 2410, a party to the underlying grievances, filed a Motion to Intervene in this matter. By Order entered July 29, 1993, the Court took the motion under advisement. Local 2410 was directed to file its pleading in intervention on or before August 18, 1993. An Intervening Complaint was filed on August 18, 1993.[2]

By Order entered October 6, 1993, the Court denied plaintiff Local 1829's motion to vacate the arbitration award, granted defendant's motion to dismiss, and directed the Clerk of Court to enter judgment for the defendant on the original complaint, 831 F.Supp. 553. Inasmuch as the Court had not received memoranda of law addressing proposed intervention or remand based upon newly discovered evidence, the Court directed the proposed intervenor and the defendant to submit an appropriate schedule for further proceedings.

On January 26, 1994, the defendant filed a Motion for Summary Judgment, accompanied by a memorandum of law which opposed Local 2410's proposed intervention and which, in the alternative, sought summary judgment.[3] On February 3, 1994, Local 2410 filed a Motion to Amend Intervening Complaint[4] and also submitted a memorandum of

---

1. At the time the dispute arose, the parties were signatories to a collective bargaining agreement, the National Bituminous Coal Wage Agreement Between Island Creek Corporation and International Union, United Mine Workers of America of 1988 ("1988 Wage Agreement") which describes the wages, hours, and terms and conditions of employment of the defendant's bargaining unit employees. Article XXIII of the collective bargaining agreement provides that any dispute arising under the agreement is to be resolved under the agreement's grievance and arbitration provision.

2. In the Intervening Complaint, Local 2410 alleged that a factual predicate of the arbitrator's decision regarding the merger of the seniority units was the assumption that the three mines would be physically connected. It is further alleged that, since the interconnection of the three mines was either never completed or connected for only a brief period of time, the arbitration decision did not authorize the defendant to merge the three separate seniority units. Local 2410 sought a remand to the arbitrator for further consideration of the new evidence.

3. In its Reply Memorandum, submitted February 25, 1994, defendant suggests that its motion for summary judgment may be premature inasmuch as Local 2410 has not yet been given leave to intervene.

4. Local 2410 seeks leave to amend to more clearly specify the type of relief which is requested. In its amended prayer for relief, Local 2410 asks the Court to remand the matter to the arbitrator for clarification in light of the circumstances which developed subsequent to the award or, in

law pursuant to the Court's October 6, 1993 Order. Reply memoranda were subsequently filed by both parties. On April 13, 1994, the Court received correspondence with various attachments from counsel for Local 2410. On May 18, 1994, the Court received correspondence with various attachments from counsel for the defendant in response to Local 2410's correspondence. It does not appear as if these supplemental documents have been filed with the Clerk of Court. In order to ensure the accuracy of the record, they shall be filed as part of the record.

Local 2410 seeks to intervene in this action as a matter of right pursuant to Rule 24(a)(2), Federal Rules of Civil Procedure. Although the defendant urges that Local 2410 did not timely seek intervention and further suggests that the Court is without subject matter jurisdiction over the intervening complaint, it does not contest that intervention in this matter is properly reviewed under Rule 24(a)(2) (Intervention of Right) as opposed to Rule 24(b) (Permissive Intervention).

■ To intervene as a matter of right, a *timely* application must demonstrate the following:

1. An interest relating to the property or transaction involved in the action;

2. Disposition of the action may impair the applicant's ability to protect its interest as a practical matter; and

3. Its interest is not adequately represented by the present parties.

7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1908, at 262 (1986); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989); *Newport News, Etc. v. Peninsula Shipbuilders*, 646 F.2d 117, 120 (4th Cir. 1981). As previously noted, the parties have not raised issue with whether Local 2410 meets the three-fold test, and the Court will, therefore, focus on whether the application for intervention was timely filed.

■ It is generally recognized that, where intervention is sought as a matter of

right, courts should be reluctant to dismiss a request for intervention as untimely inasmuch as the proposed intervenor may be seriously harmed if intervention is denied. 7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1916, at 424 (1986). In evaluating timeliness, the Court must consider:

(1) The length of time Local 2410 knew, or reasonably should have known, of its interest before intervention was sought;

(2) The prejudice to existing parties due to the failure to seek intervention promptly;

(3) The prejudice Local 2410 would suffer if intervention is denied; and

(4) Unusual circumstances militating for or against intervention.

*NAACP v. New York,* 413 U.S. 345, 364–69, 93 S.Ct. 2591, 2602–05, 37 L.Ed.2d 648 (1973); *Gould v. Alleco, Inc.,* 883 F.2d at 286; *Culbreath v. Dukakis,* 630 F.2d 15, 20–24 (1st Cir.1980).

■ Given the circumstances represented by Local 2410, that is, that it was not aware that litigation to vacate the arbitration award had been filed, and given the progress of the action at the time intervention was initially sought, the Court does not believe that intervention should be denied on that basis.

■ However, the statute of limitations issue raises a far greater problem. It is well settled in this Circuit that, in West Virginia, an action to vacate an arbitration award must be filed within three months from the date of the award. *Sheet Metal Workers Intern. v. Power City Plumbing,* 934 F.2d 557 (4th Cir.1991). Permitting intervention nunc pro tunc from the date the application was initially filed would permit Local 2410 to circumvent the statute of limitations and would, therefore, prejudice the defendant. *See, Fleming v. Lind–Waldock & Co.,* 922 F.2d 20, 26 (1st Cir.1990).[5]

■ The Court recognizes Local 2410's argument which claims that the *Sheet Metal Workers* case is inapplicable and that the

---

the alternative, to determine that the defendant's actions violated the award since the award's underlying factual predicates had not been met.

**5.** The arbitration award was issued on November 20, 1992. Local 2410's Motion to Intervene was not filed until July 28, 1993.

appropriate statute of limitations is one year under the Federal Arbitration Act, 9 U.S.C. § 9. Local 2410 has cited no case law in support of this proposition, and the Court has found none to support it. Moreover, it appears that the one-year period set forth in 9 U.S.C. § 9 is a permissive provision which is only applicable to the *confirmation* of arbitration awards under the Federal Arbitration Act. *Sverdrup Corp. v. WHC Constructors, Inc.*, 989 F.2d 148 (4th Cir.1993). Under the FAA, a motion to modify an award must be served within three months of the award, 9 U.S.C. § 12; *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir.1986), and this period applies in the labor-dispute context in West Virginia. *Sheet Metal Workers*, 934 F.2d at 560.

In the instant case, Local 2410 clearly is not seeking to confirm the award of Arbitrator Selby. While the relief requested is termed "clarification," the practical effect of the clarification sought would vacate the award. In any event, Local 2410 has not applied for confirmation of the award and the borrowing of the statute of limitations from § 9 of the FAA would, therefore, appear to be inappropriate.

Accordingly, the Court must find that the petition is untimely filed inasmuch as it would circumvent the statute of limitations and prejudice the defendant. Therefore, the intervention of Local 2410 in this action shall be denied.

Appreciating that legal minds may differ on the statute of limitations issue and acknowledging the atypical set of circumstances which the motion to intervene presents in this arbitration review case, the Court believes that, in an effort to complete the record in the event an appeal is taken, it should review the amended complaint in intervention on the merits and address the jurisdictional questions raised by the defendant's motion for summary judgment. While the defendant urges that dismissal of the original complaint leaves Local 2410 with only an appealable interest in the litigation, the Court believes that Local 2410 has raised a claim not addressed by the original complaint and further believes that the Court, absent the timeliness problem earlier addressed, would have jurisdiction to hear Local 2410's claim despite the entry of judgment on the original complaint.[6]

■ This is not to say that Local 2410 could prevail on the merits. In essence, Local 2410 claims that the arbitration award must be remanded to Arbitrator Selby so that he can clarify whether the award applies (in actuality, whether the defendant can merge the seniority units) if the three mines are not actually physically connected. However, the jurisdiction of the court to remand an arbitration award for clarification is extremely limited. While discussion of this issue by the courts is sparse, it has been recognized that an award cannot be remanded for clarification unless the award is ambiguous. 3 Fed.Proc., L.Ed. § 4:124 (1981); *Olympia & York Florida Equity Corp. v. Gould*, 776 F.2d 42, 45 (2d Cir.1985). Having once again carefully studied the thorough, well-reasoned decision of Arbitrator Selby, the Court can find no ambiguity therein.

In its Amended Intervening Complaint, Local 2410 urges that Arbitrator Selby affirmed the merger of the seniority units only after receiving the defendant's assurance that all three mines would be physically connected. According to Local 2410, because the North Branch mine is not physically connected with Laurel Run and Dobbin mine, the arbitration award is ambiguous, that is, it is uncertain whether the seniority units can be merged.

A thorough review of the arbitration award reveals that this issue was advanced by Local 1829 and Local 2410 during the hearing and considered by Arbitrator Selby in his award. At pages 24–27 of the award, Arbitrator Selby summarized the position of the parties, which included the following:

> no longer valid because the three mines have not remained physically connected. It will also be recalled that the motion to intervene was filed prior to the entry of judgment on the original complaint.

6. The original complaint, brought by Local 1829, alleged that the arbitration award violated the collective bargaining agreement because it failed to recognize length of service in affirming the merger of the seniority units. Local 2410, on the other hand, argues that the arbitration award is

**LOCAL 1829**

It [dovetailing seniority] also unreasonably adversely affects the active Laurel Run employees by bringing North Branch employees into the Laurel Run mine although North Branch has not, and will not, cut into Laurel Run. The continued use of the 11A air shaft to ventilate the mines after the cut-through does not mean that North Branch has been combined with Laurel Run.

\*    \*    \*    \*    \*    \*

The purpose of cutting Laurel Run and Dobbin together is not to run coal out of North Branch which has no reserves and its plant is to be shut down, as was indicated by Mr. Ferrell to be the plan.

Award at 25.

**LOCAL 2410**

Although the Company would like you to believe that North Branch will continue to be an integral part of the one mine complex, we feel we have shown that the Company fully intends to close North Branch and it will not contribute to the one mine complex. The possibility that the 11A air shaft now being used by North Branch will be used to ventilate the mine after Laurel Run and Dobbin are cut together does not mean that after the cut-through, North Branch will become part of the merged mine. No coal from the Dobbin/Laurel Run mine can be removed through the North Branch portal nor can supplies be taken into the Dobbin/Laurel Run Mine from North Branch. Personnel cannot be transported from North Branch to Dobbin/Laurel Run because there will be a 6,000 foot longwall gob barrier between North Branch and the other mines.

Award at 27. After reciting the positions of the parties in exhausting detail, Arbitrator Selby notes that one of the vigorously disputed issues is whether the Company has merged more than two mines, Award at 33,

and he extensively discusses the consolidation of operations. Award at 33–36.

In approving the merger of the seniority units, the arbitrator did not condition the award upon the actual, physical connection of the mines.[7] Rather, the arbitrator emphasized the interconnection of operations and the managerial right to redefine boundaries and reassign reserves. Award at 35. The present issue which Local 2410 attempts to raise is a re-argument of one of its positions which it originally presented to the arbitrator, that is, whether North Branch can be or is physically connected to the Dobbin/Laurel Run mine. The original argument failed to impress the arbitrator, and the Court finds no ambiguity in the award.[8]

For the reasons expressed herein, it is

ORDERED that the Clerk of Court shall file the correspondence previously referenced and make the same a part of the record of this action. It is further

ORDERED that Local 2410's Motion to Amend Intervening Complaint, filed February 3, 1994, shall be, and the same is hereby, GRANTED. The Clerk of Court shall file the Amended Intervening Complaint and make the same a part of the record but shall not issue process. It is further

ORDERED that Local 2410's Motion to Intervene, filed July 28, 1993, and taken under advisement by Order of July 29, 1993, shall be, and the same is hereby DENIED. It is further

ORDERED that, in the event it is determined that the petition to intervene was not untimely, the defendant's Motion for Summary Judgment, filed February 3, 1994, shall be, and the same is hereby, GRANTED. It is further

ORDERED that the Clerk shall enter judgment for the defendant in this matter,

---

**7.** In fact, the locals advised the arbitrator that the North Branch mine could never be physically interconnected.

**8.** Given this conclusion, the Court will not address the practical problems associated with remanding an arbitration award where factual issues are in dispute; it is unclear whether, prior to remand, the Court would be required to have a trial on the merits to determine whether the mines are or were physically connected. However, inasmuch as the arbitrator was aware that the factual contention existed and inasmuch as the award is not ambiguous, the Court is not inclined to address the issue.

and the civil action shall be DISMISSED and STRICKEN from the docket of the Court.[9]

9. In its October 6, 1993 Order, the Court directed the Clerk of Court to enter judgment for the defendant on the original complaint, but the record does not reflect that a judgment order was docketed. Inasmuch as the Court's Order failed to reference Rule 54(b), Federal Rules of Civil Procedure, the action was not terminated as to any of the claims or parties. Having now resolved all the claims and the rights and liabilities of all the parties, the Clerk shall prepare the order to reflect judgment for the defendant on the original complaint and judgment for the defendant on the amended intervening complaint.