**DISTRICT 1199, HEALTH CARE AND SOCIAL SERVICES UNION, SEIU, AFL–CIO and Jim Crislip, Plaintiffs,**

v.

**COORDINATED COUNCIL FOR INDEPENDENT LIVING, Defendant.**

Civil Action No. 1:95–CV–99.

United States District Court, N.D. West Virginia.

March 29, 1996.

Joan G. Hill, Crandall, Pyles & Haviland, Logan, WV, for Plaintiffs.

Richard M. Yurko, Jr., Steptoe & Johnson, Clarksburg, WV, for Defendant.

## MEMORANDUM OPINION AND ORDER

KEELEY, District Judge.

This matter is before the Court on the motion to dismiss of the defendant Coordinated Council for Independent Living Inc. ("CCIL"). This motion has been fully briefed in accordance with Local Rule 2.07 and is ripe for review. For the reasons that follow, the defendant's motion is DENIED.

## I. BACKGROUND

Jim Crislip ("Crislip") was discharged from his employment as a Residential Services Specialist ("SSA") with CCIL for alleged misconduct on April 12, 1994, after having been suspended on March 31, 1994. Immediately thereafter, District 1199, Health Care and Social Services Union, SEIU, AFL–CIO ("Union"), the certified bargaining unit that represents Crislip, filed a grievance in relation to the discharge, pursuant to Article XXII of the Collective Bargaining Agreement ("CBA") then in force between the Union and CCIL.

After a hearing, in which both sides presented evidence, the arbitrator issued an opinion on October 24, 1994 which concluded that CCIL had failed to carry its burden of proof with respect to the alleged misconduct. Consequently, he found that Crislip's discharge was without just cause and violative of his rights under the CBA. He then awarded Crislip reinstatement to his former position as an SSA, with seniority benefits and back pay dating from March 31, 1994. The award also stated that such payments and benefits were to be made to Crislip until such time as his job had been restored by CCIL or he had obtained comparable employment.

In a post-hearing brief, CCIL objected that the award of reinstatement was inappropriate, citing the fact that it had transferred all of its group homes, such as the one in which Crislip was employed, to the VOCA Corporation, in July of 1994. The arbitrator noted this objection in his opinion but expressly disregarded it since it had not been raised and tested at the August 1994 hearing. Thereafter, CCIL never formally challenged the validity of the arbitrator's award by bringing a court action to have the award vacated.

Marguerite Kyer ("Kyer"), an organizer for the Union, testified that she contacted Dennis Parucci ("Parucci"), a CCIL executive, immediately after the award was issued and was told by Parucci that he had no position available for Crislip. Then, on November 21, 1994, Parucci sent a letter to Kyer along with a check made out to Crislip in the amount of $2,735.61. The letter stated that the check represented all back pay and benefits due Crislip for the period from the date of his discharge to the evening of July 24, 1994, the date on which CCIL sold its group homes to VOCA. The letter also requested that Crislip remit any remaining medical bills incurred during this period. CCIL followed up with another letter to Crislip on February 2, 1995 which repeated the request for outstanding medical bills and set down a March 15, 1995 deadline for remittance "in an effort to bring this issue to a close." Crislip had, at this point, cashed the check enclosed in the November 1994 letter to Kyer.

On February 13, 1995, Kyer wrote Parucci, demanding that he review the arbitrator's award and grant Crislip "all that was awarded in his arbitration." Although they offer no corroborating evidence, the plaintiffs assert that, until June 1995, CCIL evidenced an intent to reinstate Crislip once a position comparable to the one he had previously held became available. CCIL, on the other hand, asserts that it maintained from the day of the arbitrator's decision that reinstatement was an inappropriate remedy and that it would not comply with that facet of the award.

The plaintiffs further contend that a position comparable to the one Crislip formerly held with CCIL eventually became available in June 1995, and that it was only after Crislip was refused this position that they became fully cognizant of the fact that CCIL

did not intend to comply with the reinstatement award. Consequently, on August 16, 1995, plaintiffs filed suit against CCIL under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.A. § 185(a) (1978), seeking full enforcement of the October 24, 1994 arbitration award.

CCIL has moved to dismiss the plaintiffs' suit pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that the claim is time barred. Since § 301 of the LMRA contains no statute of limitations for actions of this nature, the major issue before the Court concerns the proper statute of limitations to be applied to a § 301 action to enforce an arbitrator's award.

CCIL asserts that the proper statute of limitations to be applied in this case is the three-month limitation period found in § 12 of the United States Arbitration Act ("USAA"), 9 U.S.C.A. § 12 (1970). The plaintiffs, on the other hand, contend that the proper limitation period to be applied is the ten-year limitation on written contracts found in W.Va.Code § 55–2–6 (1994). Alternatively, the plaintiffs argue that the six-month period found in § 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C.A. § 160(b) (1973), should be favored over the three-month period urged by CCIL. During oral argument, counsel for CCIL argued, in the alternative, for an outside limitation period of six months.

The parties also dispute the exact point in time at which the statute of limitations began to run. Plaintiffs argue that the limitation period was tolled until June of 1995, asserting that it was not until this point that they became aware that CCIL did not intend to reinstate Crislip. CCIL argues that its position was consistent from the time of the arbitration and plaintiffs reasonably should have been aware that it did not intend to reinstate Crislip on October 24, 1994. Alternatively, CCIL asserts that plaintiffs certainly were aware of its intentions after receiving the November 21, 1994 letter and check and the subsequent letter of February 2, 1995. Therefore, it argues the limitations period should be deemed to run on one of these dates, as opposed to June 1995.

## II.  ANALYSIS

■ Because Congress did not expressly provide a statute of limitations applicable to § 301 of the LMRA, courts must "borrow" a limitations period from another statute. In *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW), AFL CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) ("Hoosier Cardinal"), the United States Supreme Court was faced with the question of what statute of limitations governed timeliness in a § 301 suit. After examining past precedent, the Supreme Court concluded that the failure of Congress to explicitly provide a limitations period in § 301 did not warrant an inference that the courts were to judicially devise such a period. Rather, the Court held, a § 301 suit should be characterized as the most analogous action arising under state law, and the corresponding limitation period applied. *Id.* at 704–707, 86 S.Ct. at 1112–1114.

In *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), however, the Supreme Court applied an analogous statute of limitations from federal law. While acknowledging the general rule from *Hoosier Cardinal* that where Congress has failed to include an applicable statute of limitations in a federal cause of action courts should apply "the most closely analogous statute of limitations under state law," *id.* at 158, 103 S.Ct. at 2287, the Court also recognized that some state statutes of limitations "can be unsatisfactory vehicles for the enforcement of federal law." *Id.* at 161, 103 S.Ct. at 2289. According to *Del Costello*, there are some circumstances where, so as not to interfere with or frustrate national policies, it may be more appropriate to look to federal law for the appropriate limitations period. *Id.* at 172, 103 S.Ct. at 2294.

Accordingly, in this case, the Court is free to draw from both state and federal law in characterizing the plaintiffs' action in order to choose the most analogous statute of limitations.

The parties agree that West Virginia law provides the appropriate state law reference.

However, while West Virginia law provides general limitation periods for actions on written contracts, W.Va.Code § 55–10–1 *et seq.*, which deals with arbitration, contains no provisions setting time limitations on actions to vacate, modify or confirm an arbitrator's award. Accordingly, this Court may choose from among three possible limitation periods: state statutes designed for contract actions; federal labor statutes; or federal arbitration statutes.

The Court will consider each option advanced by the parties *seriatim.*

### A. *W.Va.Code § 55–2–6: Ten Year Statute of Limitations For Written Contract Actions.*

In their response to defendant's motion to dismiss, the plaintiffs assert that W.Va.Code § 55–2–6, West Virginia's ten-year limitation on actions based on written contracts, applies. They ground their argument, in large part, on the holding in *Hoosier Cardinal.*

In *Hoosier Cardinal,* the relevant CBA had no arbitration clause but contained a provision that entitled employees to their accrued vacation pay upon termination. The plaintiff union brought a breach of contract action against the defendant company after it refused to pay some terminated employees for their accrued vacation time. After several unsuccessful attempts in state court, the union finally brought suit in federal court some six and one half years after the terminations giving rise to the action. The district court dismissed the case after applying Indiana's six year statute of limitations for contracts not in writing, and the court of appeals affirmed. The Supreme Court rejected the plaintiffs' call to judicially devise a limitations period, stating:

> [S]ince no federal provision governs, we hold that the timeliness of a § 301 suit, such as the present one, is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations.

*Id.* at 705, 86 S.Ct. at 1113. In a footnote, however, the Supreme Court tempered the breadth of its holding:

> The present suit is essentially an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement. Such an action closely resembles an action for breach of contract cognizable at common law. Whether other § 301 suits different from the present one might call for the application of other rules on timeliness, we are not required to decide, and we indicate no view whatsoever on that question.

*Id.* at 705 n. 7, 86 S.Ct. at 1113 n. 7.

The plaintiffs here argue that the present case is similar to *Hoosier Cardinal* in that, once the arbitrator's award was handed down, it became an integrated part of the CBA through Article XXII. Once this integration occurred, they argue, CCIL's subsequent refusal to comply with the terms of the award was, in effect, a breach of the collective bargaining agreement within the purview of the holding in *Hoosier Cardinal.*

Their argument ignores several factors that distinguish the present situation from that in *Hoosier Cardinal.* Chief among these is the fact that the dispute in that case never implicated any agreement between the parties to submit a dispute to arbitration. As the Supreme Court later noted in *Del Costello,* this fact was central to its determination in *Hoosier Cardinal* that the state statute was applicable. *Del Costello,* 462 U.S. at 162–163, 103 S.Ct. at 2289–2290. By contrast, the dispute giving rise to the lawsuit here directly implicates the integrity of an arbitrator's award, an issue at the heart of the private settlement of disputes under a CBA.

Moreover, unlike *Hoosier Cardinal,* the present case does not "closely resemble an action for breach of contract cognizable at common law." *Hoosier Cardinal* 383 U.S. at 705 n. 7, 86 S.Ct. at 1113 n. 7. *Hoosier Cardinal* centered around an employer's refusal to honor an express contractual provision within a CBA. This case centers around the employer's alleged failure to comply with an arbitrator's award that was not expressly included within the four corners of the CBA. Consequently, in contrast to *Hoosier Cardinal,* there is simply not "an obvious and close analogy between [this] variety of § 301 suit

and an ordinary breach of contract case." *Del Costello* 462 U.S. at 163, 103 S.Ct. at 2290.

Finally, and of utmost importance, application of a ten-year statute of limitations to this action would be inconsistent with the goals of our nation's articulated policy of rapid disposition of labor disputes. In *Hoosier Cardinal,* the Supreme Court clearly stated that a state law characterization of an action for purposes of selecting an appropriate statute of limitations should be rejected if that characterization is unreasonable or otherwise inconsistent with national labor policy. *Hoosier Cardinal,* 383 U.S. at 707, 86 S.Ct. at 1114.

Applying a ten-year statute of limitations here to what is essentially an action to enforce an arbitration award would clearly run counter to the national policy of "relatively rapid disposition of labor disputes." *Id.*[1]

Similarly unpersuasive is plaintiffs' reliance on *San Diego County Dist. Council v. Cory,* 685 F.2d 1137 (9th Cir.1982), in which the Ninth Circuit Court of Appeals applied a state statute of limitations over the limitation period for motions to vacate awards contained in § 12 of the USAA. The state limitation statute in issue, however, dealt specifically with actions to confirm arbitration awards. No similar statute exists in West Virginia. Moreover, the duration of the state limitation period was a relatively quick 100 days and did not run afoul of the national interest in quick resolution of labor disputes.

This Court will not apply West Virginia's ten year statute of limitations for written contracts to this action. Not only can this case not fairly be characterized as one arising from an alleged breach of an employer's obligation embodied in a written CBA, but application of such a lengthy limitation period would be inconsistent with national labor policy.

B. *Section 10(b) of the NLRA, 29 U.S.C. § 160(b): Six Months.*

As noted earlier, the United States Supreme Court applied the six-month limitation period of § 10(b) of the NLRA to a § 301 action in *Del Costello.* That case was actually comprised of several cases in which an employee/union member had sued both the employer and the union, alleging that the employer had breached a provision of the CBA and that the union had breached its duty of fair representation by mishandling the ensuing grievance and arbitration procedure. In later opinions, such an action has come to be known as a "hybrid/§ 301 action."

In an earlier decision, *United Parcel Service v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the Supreme Court had applied a *state* statute of limitations for vacation of an arbitration award to a hybrid/§ 301 action. In *Del Costello,* however, it decided that a hybrid/§ 301 action, which encompasses two separate causes of action, one against an employer and another against a representative union, is more closely analogous to an unfair labor practice action than to an action to vacate an arbitration award, and applied § 10(b)'s six-month limitation period.

The Court revisited the question of the applicability of § 10(b)'s six-month statute of limitations to a § 301 action in *Reed v. United Transportation Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). In that case, a local union official had sued his union's president under § 101(a)(2) of Title I of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C.A. § 411(a)(2) (1985), alleging that the president's disallowance of reimbursement payments for "time lost" in carrying out union duties constituted a violation of his right to free speech on union matters under the LMRDA. The plaintiff, however, waited more than two years after the disallowance to file suit in federal district court. The defendant moved for summary judgment, asserting § 10(b)'s six-month limitation period.

1. In their brief responding to the defendant's motion to dismiss, the plaintiffs all but concede this point, effectively abandoning their argument for application of the ten-year limitations period in favor of the six-month period contained in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b).

Although the district court had denied the motion, the circuit court held that the six-month limitation period applied.

The United States Supreme Court reversed, finding that the six month period was not attuned to the core federal interest furthered by § 101(a)(2) of the LMDRA—"the interest in union democracy promoted by free speech and assembly rights of union members." *Id.* at 327–328, 109 S.Ct. at 627. Distinguishing a suit brought under the LMRDA from the hybrid/§ 301 suit that was the focus in *Del Costello,* the Court stated:

[A] Title I [of the LMRDA] suit does not directly challeng[e] the 'stable relationship' between the employer and the union. It does not affect any interpretation or effect any reinterpretation of the collective bargaining agreement and so, unlike the hybrid actions, a Title I claim does not attack a compromise between labor and management ... *There is no erosion of the finality of private settlements, for in the free standing LMRDA cases the union member is not attempting to attack any such settlement.*

*Reed,* 488 U.S. at 331, 109 S.Ct. at 629 (*quoting, Doty v. Sewall,* 784 F.2d 1, 7 (1st Cir. 1986)) (emphasis added).

Similarly, the motion now before the Court does not seek to attack the arbitrator's award which represents a compromise between labor and management. Plaintiffs are attempting to enforce this award as it was written. The defendant, which never filed a motion to vacate the award, no longer has standing to dispute it on its merits and argues that the award is inapplicable to it because it no longer owns the group homes involved in the dispute. While this may be the case, the defendant's claim was never formally lodged in the form of a motion to vacate the arbitrator's award, and national labor policy dictates that the time for the Court to consider the merits of this award has long since passed. *See Hoosier Cardinal, supra* at 707, 86 S.Ct. at 1114. Following the reasoning of *Reed,* therefore, the Court concludes that this case is not closely analogous to an unfair labor practice suit and § 10(b)'s six-month limitation period is inapplicable.

It is also important to note that none of the special considerations noted by the Court in *Del Costello* are present here. Crislip has been represented throughout this matter, and continues to be represented, by his union. He was not required to investigate his union's representation of him in the underlying grievance and arbitration procedure and to frame a new suit with the help of new counsel. According to the defendant, this fact demonstrates that Crislip should not be afforded a longer limitations period than a hybrid/§ 301 plaintiff. It would be fundamentally unfair, however, to apply the same limitations period to Crislip who, because the award was favorable to him, had not begun to think in terms of legal action until long after its issuance, as to a plaintiff who, in a hybrid/§ 301 suit, is immediately aware that legal action will be necessary to invalidate an adverse award. At oral argument, defendant argued that *Del Costello* sets an outer limit of six months within which to bring any action relating, in any way, to an arbitration agreement. When confined to actions that directly challenge the validity of an arbitrator's award, such as an action to vacate or modify, the Court agrees with this argument. When it is expanded to actions to enforce an admittedly valid award, however, it is simply too expansive.

Unlike an action that directly challenges the merits of an award, an action to confirm or enforce an arbitrator's award does not implicate the underlying federal interest in the prompt resolution of labor disputes. The Third Circuit Court of Appeals recognized this point in *Service Employees International Union v. Office Center Services,* 670 F.2d 404, (3d Cir.1982), stating:

There are sound reasons for distinguishing between the period in which a motion to vacate can be brought and the period for bringing an action to confirm. An action to vacate an award challenges the underlying validity of the arbitration proceeding and award. The policy of quickly resolving disputes subject to arbitration, especially labor disputes, favors a short limitations period for such challenges. Occasionally, in the implementation process, however, parties to an arbitration may be willing or

find it necessary to readjust the terms of the arbitration award before seeking its confirmation. Recognizing the realities of the marketplace, the Pennsylvania legislature may with good reason have allowed a longer period of time for the confirmation of a concededly valid award without forcing the parties to resort to judicial involvement.

*Id.* at 412. This Court, therefore, rejects the defendant's argument that *Del Costello* places an outer limit of six months on all actions that implicate, however tangentially, an arbitrator's award.

When the holdings in *Del Costello* and *Reed* are read *in para materia*, it is apparent that the six-month limitation period of § 10(b) applies only to suits that challenge both the validity of an arbitrator's award and the effectiveness of a union's representation. Because the plaintiffs' action here challenges neither, the Court concludes that the six-month period in § 10(b) is inapplicable.

### C. Section 12 of the United States Arbitration Act, 9 U.S.C.A. § 12: Three Months.

Relying on *Sheet Metal Workers International v. Power City Plumbing,* 934 F.2d 557 (4th Cir.1991), the defendant urges the Court to apply the three-month statute of limitations for actions to vacate an arbitrator's award that is contained in § 12 of the USAA. In that case, the Fourth Circuit affirmed a district court's application of the three-month limitation period to an action in West Virginia to vacate an arbitrator's award. *Id.* at 560. In reaching its decision, the circuit court recognized that there is no limitation period in West Virginia law governing actions to vacate an arbitration award. It found it was unnecessary to resort to the state/federal dichotomy articulated in *UPS* and *Del Costello,* however, finding that § 12 of the USAA provided the most closely analogous limitations period in an action to vacate an arbitration award. *Id.*

If this case sought to vacate the arbitrator's award, the holding in *Sheet Metal Workers* unquestionably would apply. Here, however, the plaintiffs seek to enforce, not vacate, an award, so the Court must decide whether such an action is sufficiently analogous to an action to vacate to warrant application of the same limitations period.

Relying on the decision of the Third Circuit in *Eichleay Corp. v. International Association of Iron Workers,* 944 F.2d 1047 (3rd Cir.1991), the defendant argues that the same three-month limitations period ought to apply whether the action is one to confirm or to vacate an arbitration award. It points particularly to the following statement of the opinion:

Both labor unions and union employers are sufficiently sophisticated in the mechanics of arbitration and litigation to know that arbitration awards must be promptly enforced or vacated.... We conclude that the rule announced in *Service Employees,* that state statutes of limitations apply to petitions under section 301 to confirm or vacate arbitration awards remains the law of this circuit.

*Eichleay,* 944 F.2d at 1061. According to defendant, the import of this language is that actions to vacate and confirm arbitration awards are similar and should, therefore, be subject to the same limitations periods. Although initially appealing, this argument does not withstand close scrutiny.

In *Service Employees International Union v. Office Center Services,* 670 F.2d 404, 408 (3d Cir.1982), the case which *Eichleay* reaffirmed, the Third Circuit held that the statute of limitations in the Pennsylvania Arbitration Act, not a uniform federal limitations period, applied in a § 301 action to confirm an arbitration award. The relevant provisions of the Act, 5 Pa.Stat.Ann. §§ 169 and 173 (Purdon 1963) (superseded) clearly distinguish between actions to confirm arbitration awards and actions to vacate them. Section 169 provides that an action to confirm an award must be filed within one year after it is made, while § 173 provides that a motion to modify, correct, or vacate an award must be made within three months after the award is filed. *Service Employees,* 670 F.2d at 410 n. 13. Thus, an assertion that *Eichleay* stands for the proposition that the same limitation period should be applied both to actions to vacate and to confirm misapprehends the actual holding of the case.

Although the three-month limitations period § 12 of the USAA clearly governs § 301 actions to vacate arbitration awards brought in West Virginia, the Court concludes that it does not provide the closest analogy in an action to confirm an arbitrator's award.

D. *Section 9 of the United States Arbitration Act, 9 U.S.C.A. § 9: One Year.*

■ Neither of the parties advocated for adoption of § 9 of the USAA, 9 U.S.C.A. § 9 (1973), which allows parties one year within which to bring an action to confirm an arbitrator's award. For the following reasons, however, the Court concludes that § 9 provides the closest analogy to the present enforcement action.

In several respects, an action for compulsory enforcement of an arbitrator's award is more similar to a § 9 confirmation action than to either an action to vacate an award or to challenge an unfair labor practice. The key similarity between the two is that neither seeks to rehash the underlying factual and legal issues involved in the arbitration. This stands in stark contrast to actions to vacate awards as well as hybrid/§ 301 actions where the ultimate goal is to have the award overturned. Consequently, neither an enforcement nor a confirmation action impinges the federal policy favoring quick resolution of labor disputes and, therefore, neither requires a shorter limitations period.

As noted earlier, in *Sheet Metal Workers,* the Fourth Circuit borrowed a time limitation period from the USAA for a § 301 case involving vacation of an arbitration award issued in West Virginia. If it was appropriate for that court to borrow § 12's analogous limitation period in an action to vacate an arbitrator's award, it ought to be appropriate for this Court, in this enforcement action, to borrow the time limitations period from § 9 for actions to confirm an award.

The decision in *Local 1829 v. Island Creek Coal Co.,* 157 F.R.D. 380 (N.D.W.Va.1994), supports this reasoning. In that case, the district court considered the plaintiff's motion to intervene as of right in an action to vacate an arbitration award that was filed more than eight months after the award was issued. Rejecting the plaintiff's argument that the one year period contained in § 9 of the USAA applied, the Court recognized that the ultimate goal of the intervention was vacation of the award and applied the three-month period contained in § 12. *In dicta,* however, the court indicated that it would have applied § 9's one-year limitation period had the union sought to confirm the arbitrator's award.

> In any event, Local 2410 has not applied for confirmation of the award and the borrowing of the statute of limitations from § 9 of the [USAA] would, therefore, appear to be inappropriate.

*Local 1829,* 157 F.R.D. at 384.

Further support for applying § 9 of the USAA is found in footnote 13 of *Service Employees, supra,* at 410, where the court compared the limitation periods of the Pennsylvania Arbitration Act for motions to confirm and vacate to their counterparts in the USAA and found them to be substantially similar. Both sets of statutes allow litigants three months to file motions to vacate and one year to file motions to confirm. The time limits in the USAA, therefore, approximate those found in similar state arbitration statutes.

Under *Hoosier Cardinal* and its progeny, application of such analogous state or federal time limits is clearly favored over the application of a uniform federal limitations period, such as § 10(b) of the NLRA. Accordingly, the Court holds that the one year statute of limitations in § 9 of the USAA applies to the plaintiffs' cause of action. Moreover, because § 9 specifically provides that the limitation period begins to run on the date an award is issued, the Court's ruling moots the dispute between the parties as to whether and when tolling of the limitations period occurred. The Arbitrator's opinion and award were issued on October 24, 1994 and the plaintiffs' complaint seeking enforcement of the award was filed on August 16, 1995, well within § 9's one-year window.

### ORDER

For the reasons stated in the Court's Memorandum Opinion, the motion of the defendant to dismiss the plaintiffs' complaint

pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 3) is DENIED.

Pursuant to 28 U.S.C. § 1292(b), the Court states its opinion that its Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation.